# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 25, 2022

FILED BY_____ AP _____ D.C.

*Apr 25, 2022*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  21-10835-CC
Case Style: Adrian Mojica-Morales v. Acting Secretary, United State, et al
District Court Docket No: 2:20-cv-14220-AMC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10835

_____

ADRIAN MOJICA-MORALES,

Plaintiff-Appellant,

*versus*

ACTING SECRETARY, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,
DIRECTOR, NEBRASKA SERVICE CENTER, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,
ACTING DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
ACTING DIRECTOR OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,
ACTING MIAMI FIELD OFFICE DIRECTOR, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:20-cv-14220-AMC

————————————————

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: January 7, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10835

Non-Argument Calendar

_____

ADRIAN MOJICA MORALES,

Plaintiff-Appellant,

*versus*

ACTING SECRETARY, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,
DIRECTOR, NEBRASKA SERVICE CENTER, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,
ACTING DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
ACTING DIRECTOR OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,
ACTING MIAMI FIELD OFFICE DIRECTOR, U.S.

CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:20-cv-14220-AMC

————————————————

Before Luck, Lagoa, and Hull, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Adrian Mojica Morales appeals the district court's dismissal of his complaint seeking judicial review of the Department of Homeland Security's ("DHS") termination of his status under the Deferred Action for Childhood Arrivals program ("DACA"). Mojica Morales sued under the Administrative Procedure Act ("APA"). The district court dismissed his complaint for lack of subject matter jurisdiction and, alternatively, based on collateral estoppel.

After review, we conclude that the district court had subject matter jurisdiction over Mojica Morales's complaint, but we affirm because his complaint failed to state a claim.

## I.    OVERVIEW OF DACA

On June 15, 2012, then-Secretary of DHS Janet Napolitano announced the program now known as DACA.  DACA makes available "deferred action"—a non-binding decision to forbear from seeking one's removal—to certain young people brought to this country as children.  DHS administers its DACA program through Immigration and Customs Enforcement ("ICE") and the United States Citizenship and Immigration Services ("USCIS").

DHS's "DACA Memorandum instructs [ICE] to exercise prosecutorial discretion on an individual basis . . . by deferring action for a period of two years, subject to renewal." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ___, 140 S. Ct. 1891, 1902 (2020) (quotation marks and brackets omitted).  It also "directs [USCIS] to accept applications to determine whether these individuals qualify for work authorization during this period of deferred action." *Id.* (quotation marks omitted).

After a background check is completed, successful requestors, at the discretion of USCIS, receive deferred immigration action for two years, subject to renewal.  USCIS has also provided its officers with procedural guidance regarding DACA adjudications and terminations through its Standard Operating Procedures ("SOP").  The DACA SOP details how and when to terminate a noncitizen's DACA status in different circumstances.  Generally, USCIS officers issue a Notice of Intent to Terminate ("NOIT") to individuals who were mistakenly or wrongfully provided DACA status.  However, when an individual who already has DACA

status is later determined to be an Egregious Public Safety ("EPS") concern, the DACA SOP provides for termination without issuance of a NOIT.

According to an USCIS Policy Memorandum issued on November 7, 2011, an EPS concern is "a case where information indicates the [noncitizen] is under investigation for, has been arrested for (without disposition), or has been convicted of" certain offenses. Those offenses include "[c]rimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA." That EPS definition is used by both ICE and USCIS.

With this DACA background, we examine Mojica Morales's appeal.

## II.    FACTUAL BACKGROUND

In October 2002, Mojica Morales, a Mexican citizen, was brought at age two from Mexico to the United States without inspection. Since his arrival, he has resided in Indian River County, Florida.

On January 24, 2018, USCIS approved Mojica Morales's first DACA application, providing him with deferred action on removal for two years, subject to renewal. Then, on October 24, 2019, USCIS approved Mojica Morales's DACA renewal application. Both DACA approval notices issued to Mojica Morales state that USCIS and DHS have "the sole discretion" to provide an opportunity for the requestor "to address derogatory information before

deferred action is terminated and/or removal proceedings are initiated."

On April 23, 2020, ICE reported to USCIS that Mojica Morales, along with two others, was recently arrested for kidnapping and beating a man with a weapon. ICE further reported that (1) Mojica Morales "planned on feeding [the victim] to alligators," (2) the victim lived in Mojica Morales's community, and (3) the victim and his family were "terrified." ICE stated, however, that Mojica Morales was released from the jail before ICE could take him into custody.

ICE sent a formal request to USCIS to terminate Mojica Morales's status under DACA. ICE stated that Mojica Morales was determined to be an EPS concern because "he has been charged with Kidnapping (Felony) and Aggravated Battery (Felony)."

On May 12, 2020, USCIS Headquarters ("HQSCOPS") responded to a Request for Adjudicative Guidance regarding Mojica Morales's pending charges and ICE's EPS finding. HQSCOPS stated that because "the Aggravated Battery charge would have a presumptive minimum sentence of 21 months" and "is a crime of violence," Mojica Morales qualified as an EPS concern under DACA guidelines. As such, Mojica Morales's DACA status could "be terminated without a NOIT."

On May 15, 2020, USCIS sent Mojica Morales a Termination Notice stating that USCIS had "determined that exercising prosecutorial discretion in your case is not consistent with the

Department of Homeland Security's enforcement priorities." As such, Mojica Morales's DACA status was "terminated as of the date of this notice."

On June 2, 2020, formal criminal charges were filed against Mojica Morales in the Indian River County Circuit Court. The charges stated that "[o]n or about April 3, 2020," Mojica Morales and others kidnapped, falsely imprisoned, and battered the victim with a knife.

After Mojica Morales's DACA status was terminated on May 15, 2020, ICE issued a Notice to Appear ("NTA") to Mojica Morales to initiate removal proceedings. The NTA, dated June 5, 2020, stated that Mojica Morales was a native and citizen of Mexico; he arrived in the United States near Laredo, Texas, in 2002; and he was not then admitted or paroled with inspection. It charged him as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), because he was present in the United States without being admitted or paroled.

## III.    PROCEDURAL HISTORY

### A. Case #: 2:20-cv-14206

On June 23, 2020, Mojica Morales filed a complaint against DHS, ICE, and USCIS in the United States District Court for the Southern District of Florida. His complaint sought declaratory and injunctive relief from the termination of his status under DACA. Mojica Morales's complaint asserted jurisdiction under the APA

and the Declaratory Judgment Act ("DJA") and claimed that DHS's termination of his DACA status was arbitrary and capricious.

Seven days later, on June 30, 2020, the district court *sua sponte* dismissed his complaint for lack of subject matter jurisdiction, stating that neither the APA nor the DJA conferred subject matter jurisdiction on federal courts.[1]

### B.  Case #: 2:20-cv-14220

On July 1, 2020, Mojica Morales filed a new complaint against DHS and the other same respondents, seeking again declaratory judgment and injunctive relief.  Mojica Morales's new complaint asserted identical claims for relief and the same jurisdictional grounds.  This time though, under the jurisdiction heading in his new complaint, Mojica Morales added (1) a block quote from the Supreme Court's recent discussion about DACA and APA causes of action in *Regents*, 140 S. Ct. 1891, and (2) a section of the APA that applies to review of agency rulemaking.  5 U.S.C. § 702.

The government filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim.  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  In its order granting the government's motion, the district court (1) dismissed Mojica Morales's new complaint for

---

[1] Although the order does not so indicate, "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1235 (11th Cir. 2021) (quotation marks omitted).

lack of subject matter jurisdiction, and (2) alternatively found that the new complaint was barred by collateral estoppel because Mojica Morales's prior complaint challenged the identical agency action that the district court previously dismissed on the same grounds.[2]  Mojica Morales timely appealed.

## IV.   STANDARD OF REVIEW

We review *de novo* a dismissal for lack of subject matter jurisdiction. *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020).  We review the district court's factual findings as to subject matter jurisdiction for clear error.  *Perez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014).  We may affirm on any ground supported by the record.  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007).

## V.   SUBJECT MATTER JURISDICTION

Rule 12(h)(3) provides that a court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).  Subject matter jurisdiction cannot be waived by the parties. *First Union Nat'l Bank of Fla. v. Hall*, 123 F.3d 1374, 1378 n.7 (11th Cir. 1997).  "A 'facial attack' on the complaint requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the

---

[2] The first complaint was filed in the Southern District of Florida and dismissed by Judge Robin L. Rosenberg.  The new complaint was also filed in the Southern District of Florida but was dismissed by Judge Aileen M. Cannon.

allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

The district court correctly noted that the APA does not confer subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 104–07, 97 S. Ct. 980 (1977). The district court also correctly determined that a claim under the DJA cannot serve as an independent basis for federal subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876 (1950).

Nonetheless, "[t]he law of this circuit . . . is that 'where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute.'" *Arce v. Garcia*, 434 F.3d 1254, 1257 n.8 (11th Cir. 2006) (quotation marks omitted). Relevant here, 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Importantly, this Court has stated, "Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Perez*, 774 F.3d at 965. Therefore, while Mojica Morales's new complaint did fail to cite 28 U.S.C. § 1331, the facts alleged in his new complaint satisfy the jurisdictional requirements of § 1331 because those facts challenge federal agency action and raise federal questions. *See Arce*, 434 F.3d at 1257 n.8.

Although there is subject matter jurisdiction to proceed, this appeal still presents several issues as to whether the federal agency action at issue—termination of an individual's DACA status—is subject to judicial review.

## VI.   *REGENTS* AND JUDICIAL REVIEW OF AGENCY'S DACA DECISIONS

Under the APA, courts may "set aside [an] agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Also under the APA, there are two exceptions to the general presumption that agency actions are reviewable. *See id.* § 701(a); *Regents*, 140 S. Ct. at 1905. The first is when a statute expressly "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). The second is when, even though Congress has not affirmatively precluded judicial review by statute, the "agency action is committed to agency discretion by law." *Id.* § 701(a)(2).

The Supreme Court has recently provided some guidance as to judicial review of agency action concerning DACA recipients. In 2017, then-Acting Secretary of DHS Elaine C. Duke issued a memorandum stating the agency's intent and plan to terminate the DACA program. *Regents*, 140 S. Ct. at 1903. Multiple groups of plaintiffs sued DHS in three different federal district courts, challenging the agency's rescission of DACA as arbitrary and capricious under the APA. *Id.* Two district courts enjoined the agency's DACA rescission, the third district court vacated the agency action, and all three rejected the government's arguments that the DACA

claims were (1) unreviewable under the APA, and (2) that the INA deprived the court of jurisdiction. *Id.* at 1903–04.

The agency appealed all three district court rulings, and the United States Solicitor General, on behalf of the agency, filed three petitions for certiorari before judgment. *Id.* at 1905. Before the Supreme Court granted the petitions and consolidated the cases, the Ninth Circuit affirmed the Northern District of California's ruling. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018).

In *Regents*, one issue addressed by the Supreme Court was "whether the APA claims are reviewable." *Regents*, 140 S. Ct. at 1905. Ultimately, the Supreme Court decided that the agency's decision to rescind the DACA program was subject to judicial review under the APA and that neither exception to APA reviewability applied. *Id.* at 1905–07.

The Supreme Court in *Regents* concluded that there was no statutory bar to judicial review of the agency's DACA rescission. *Id.* at 1907. Specifically, the Supreme Court rejected the government's argument that 8 U.S.C. § 1252(g) precluded judicial review. Section 1252(g) bars "any cause or claim by or on behalf of any alien . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court held that "[t]he rescission [of DACA], which revokes a deferred action program with associated benefits, is not a decision to 'commence proceedings,' much less to

'adjudicate' a case or 'execute' a removal order." *Regents*, 140 S. Ct. at 1907.

The *Regents* Court also rejected the government's argument that 5 U.S.C. § 701(a)(2) barred judicial review of the agency's DACA rescission. Section 701(a)(2) provides that agency action is not reviewable if the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The government argued that DACA was a non-enforcement policy and that "'an agency's decision not to prosecute or enforce' is 'generally committed to an agency's absolute discretion.'" *Regents*, 140 S. Ct. at 1906 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S. Ct. 1649 (1985)). The Supreme Court concluded that because DACA "is more than a non-enforcement policy, its rescission is subject to review under the APA." *Id.* at 1907. The Supreme Court held that "the DACA Memorandum does not announce a passive non-enforcement policy; it created a program for conferring affirmative immigration relief. The creation of that program—and its rescission—is an 'action [that] provides a focus for judicial review.'" *Id.* at 1906 (quoting *Chaney*, 470 U.S. at 832, 105 S. Ct. at 1656). Therefore, "its rescission is subject to review under the APA." *Id.* at 1907.

## VII.   ANALYSIS OF MOJICA MORALES'S DACA TERMINATION

We first conclude that the government has not shown that judicial review is barred as to DHS's decision to terminate Mojica Morales's status under DACA. The government relies on both

8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a)(2), which we address in turn.

### A.  8 U.S.C. § 1252(g)

Section 1252(g) of Title 8 bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

As stated above, the *Regents* Court held that § 1252(g) did not apply to the agency's rescission of the DACA program because revoking a deferred action program with associated benefits was not a "decision to commence proceedings, much less to adjudicate a case or execute a removal order." *Regents*, 140 S. Ct. at 1907. We recognize that *Regents* dealt with DHS's decision to terminate the entire DACA program, whereas this case concerns an individual determination to terminate DACA status.  While *Regents* is not squarely on point, *Regents* is sufficiently similar for us to conclude (1) that the May 15 termination of Mojica Morales's DACA status is not a "decision to commence proceedings, much less adjudicate a case or execute a removal order," and (2) that § 1252(g) does not apply to DHS's termination of Mojica Morales's status under DACA.  Indeed, the NTA, issued June 5, 2020, is the "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders" that § 1252(g) refers to.

## B.  5 U.S.C. § 701(a)(2)

As noted earlier, 5 U.S.C. § 701(a)(2) precludes judicial review of agency action that is committed to agency discretion by law.  5 U.S.C. § 701(a)(2).

The Supreme Court has held that 5 U.S.C. § 701(a)(2) applies to an agency's discretionary enforcement decisions.  *Chaney*, 470 U.S. 831–32.  However, as outlined above, the *Regents* Court held that DHS's DACA program was "not simply a non-enforcement policy," and therefore was not subject to § 701(a)(2).  *Regents*, 140 S. Ct. at 1905–06.  Again, we recognize that this appeal concerns DHS's termination of an individual's DACA status through USCIS and ICE, not DHS's rescission of the entire DACA program.  But without more here, we see no reason to deviate from the *Regents* Court's guidance as to judicial review of the same agency's DACA decision on that basis.

Given judicial review is not barred, we next examine whether Mojica Morales's new complaint states a claim.

## VIII.   FAILURE TO STATE A CLAIM

Under Rule 12(b)(6), the defendant may move to dismiss a complaint for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts need not accept conclusory statements as true. *Id.*

Mojica Morales claims that DHS's decision to terminate his status under DACA was arbitrary and capricious.  As outlined above, DHS terminated Mojica Morales's DACA status without first issuing a NOIT because he was determined to be an EPS concern due to his arrest for kidnapping and aggravated battery.  An individual is an EPS concern if "[the noncitizen] is under investigation for, has been arrested for (without disposition), or has been convicted of" certain offenses, including "[c]rimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA."  If an individual is found to be an EPS concern, the DACA SOP states that issuance of a NOIT is not required.[3]

Here, in his new complaint, Mojica Morales admits he was charged with having committed kidnapping, false imprisonment, and aggravated battery.  Mojica Morales even attached the official charging documents against him.  All of this is entirely consistent with ICE's report to USCIS on April 23, 2020, which stated that

---

[3] We are applying the guidance provided in the DACA SOP, and Mojica Morales does not challenge DHS's authority to issue the DACA SOP.

Mojica Morales was an EPS concern because he was in jail for kidnapping and beating a man with a weapon.  So, the only question is whether aggravated battery is a crime of violence.

Section 101(a)(43)(F) of the INA defines a "crime of violence" the same way that term is defined in 18 U.S.C. § 16.  INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).  Section 16 states that a crime of violence includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).

Under Florida law, a person commits aggravated battery when, during the commission of committing a battery, he "[i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement" or "[u]ses a deadly weapon."  Fla. Stat. § 784.045(1)(a).  Aggravated battery is a second-degree felony punishable by up to 15 years in prison.  *Id.* §§ 784.045(2); 775.082(3)(d).  This Court has held that § 784.045(1)(a) is a "crime of violence" as defined in 18 U.S.C. § 16(a).  *Lukaj v. U.S. Att'y Gen.*, 953 F.3d 1305, 1312 (11th Cir. 2020).

In sum, Mojica Morales was charged with aggravated battery, which is a crime of violence that carries a minimum prison term of over one year, and he has failed to allege any facts to

21-10835                 Opinion of the Court                 17

support his claim that it was arbitrary and capricious for DHS to terminate his DACA status.[4]  Accordingly, we affirm.

**AFFIRMED.**

---

[4] Given this ruling, we need not address Mojica Morales's collateral estoppel arguments.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 07, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-10835-CC
Case Style:  Adrian Mojica-Morales v. Acting Secretary, United State, et al
District Court Docket No:  2:20-cv-14220-AMC

Electronic Filing

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs